# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 19-10095-TPA |
| | : | |
| LARRY E. CHARLES, | : | Chapter 12 |
| SHIRLEY M. CHARLES, | : | |
| | : | Document No. |
| Debtors. | : | |

## DISCLOSURE STATEMENT
## TO ACCOMPANY AMENDED PLAN DATED AUGUST 16, 2019

Debtor furnishes this disclosure statement to creditors in the above-captioned matter to assist them in evaluating Debtors' proposed Chapter 12 plan, a copy of which is attached hereto.

**I.** **Background**

**1.** **Name of Debtors**

Larry E. Charles and Shirley M. Charles

**2.** **Type of Debtor**

Debtors are individuals.

**3.** **Debtors' Business or Employment**

Debtors are engaged in dairy farming in Crawford County.

**4.** **Date of Chapter 12 Filing:**

Debtor filed its Chapter 12 Bankruptcy on February 4, 2019.

**5.** **Events that Caused the Filing:**

The Debtors initiated this Chapter12 filing in response to the failure of their previous case and to reorganize after the surrender of some of their real estate that had hindered their ability to reorganize successfully in their previous filing.

**6.    Anticipated Future of the Debtors' Farming Operation and Source of this Information and Opinion:**

Debtors have significantly reduced their expenses by surrendering property they could not afford. Debtors have increased dairy production from their dairy operations as well. Mr. Charles has sought to supplement his income through wages and will be able to fund the Plan from that source as well as their social security income and dairy farm operations.

**7.    Summarize all Significant Features of the Plan Including When and How Each Class of Creditor Will Be Paid and What, If Any, Liens Will Be Retained By Secured Creditors or Granted to Any Creditor Under the Plan**

A. Administrative Claims.

Administrative payments to the Chapter 12 Trustee shall be consistent with the United States Bankruptcy Code, Unites States Trustee's Guidelines, and only upon prior approval of the Bankruptcy Court. An administrative payment or payments to Thompson Law Group, P.C. for any balance of compensation and reimbursement of costs and expenses as approved by the Bankruptcy Court. The disbursement schedule provided to the Chapter 12 Trustee will allow for estimated attorney's fees. Thompson Law Group, P.C. estimates that it will be requesting approximately $35,000.00 to be paid through the Plan. Any amount approved shall be paid in accordance with the Bankruptcy Code and as directed by the Court on a monthly and annual basis, or as directed by further order of Court, as funds become available until all approved fees have been paid in full.

B. Secured Tax Claims Venango County Tax Claim Bureau (Proof of Claim 4).

Venango County Tax Claim Bureau holds secured tax liens against Debtors' real property. Debtors shall pay Venango County Tax Claim Bureau its claims according to the following terms:

    i.    $56,500.90 at 9% for 120 months, at $715.73 per month (first 60 months as part of Debtors' Plan, then 60 months directly by Debtors.).

2

C.  Secured Creditors

    a.    CNH Industrial Capital America, LLC (Proof of Claim 6).

CNH Industrial Capital America, LLC holds a security interest in Debtors' 2009 Case IH Magnum Tractor 275 (serial number Z9RZ02084). Property will be surrendered on October 1, 2019.

    b.    CNH Industrial Capital America, LLC (Proof of Claim 7).

CNH Industrial Capital America, LLC holds a security interest in Debtors' Case 420 skid loader, having a fair market value of $1,000.00.

CNH Industrial Capital America, LLC holds a security interest in farm equipment (2006 Case 420 Skid Steer Loader Serial Number NGM412640) as listed on Debtors' Schedules. Debtors shall pay CNH Three Thousand Dollars and No Cents ($3,000.00), payable at 6.25% interest as follows. $58.35 each month for 60 months.

    c.    Farm Service Agency (Proof of Claim 2).

USDA, Farm Service Agency (FSA) is a secured creditor herein. The allowed claim of FSA in the amount of $117,153.14 will be modified as follows:

Loan 44-06: $99,705.79 will be re-amortized over 15 years at 5.0% interest for a monthly payment of $800.00 beginning the month following Plan confirmation.

Loan 44-07: $17,447.35 will be re-amortized over 15 years at 5.0% interest for a monthly payment of $150.00 beginning the month following Plan Confirmation

    d.    Fairport Asset Management II, LLC (Proof of Claim 13)

Debtors shall pay Fairport Asset Management II, LLC $50,864.31 at an interest rate of 6% over a period of 15 years in 180 equal monthly payments of $429.22. The first 60 payments will be

paid through the plan, and the remaining 120 payments shall be made directly to Fairport Asset Management II, by the Debtors with all liens being released upon the final payment.

  e. Any collateral supporting a pre-petition secured debt that is not provided for in this Plan shall be surrendered and treated as a general unsecured claim.

  D.  Priority Tax Creditors

  a. Internal Revenue Service (Proof of Claim 5)

The priority clam of the Internal Revenue Service in the amount of $3,641.30 shall be paid over 5 years at 0% interest in 60 monthly payments of $60.69 each.

  E.  General Unsecured Claims

After administrative payments and dividends to the above-stated creditors are made, if available, dividends shall be made to the unsecured creditors whose claims are timely filed, unless an objection to their claim has been sustained, from the balance remaining. Debtors estimate that the unsecured creditors will receive one percent (1.0%) of their claim. However, that is just an estimate and is not intended to be a guaranteed fixed amount to be paid to the unsecured creditors.

**8. Are All Monthly Operating Statements Current and on File with the Clerk of Court?**

  Yes  X    No  _____

**If Not, Explain:**

**9. Does the plan provide for releases of non-debtor parties? Specify which parties and terms of release.**

  No.

**10. Identify all executory contracts that are to be assumed, assumed and assigned, or rejected.**

4

None.

**11.    Has a bar date been set?**

Yes, proofs of claim due by April 15, 2019 for non-governmental creditors and August 5, 2019 governmental creditors.

**II.    <u>Comparison with Chapter 7 Liquidation</u>**

If Debtors' proposed Plan is not confirmed, the potential alternatives would include proposal of a different plan, dismissal of the case or conversion of the case to Chapter 7. If this case is converted to Chapter 7, a trustee will be appointed to liquidate the debtors' non-exempt assets. In this event, all secured claims and priority claims, including all expenses of administration, must be paid in full before any distribution is made to unsecured claimants.

| | |
|---|---:|
| Total value of Chapter 7 estate (See Section III) | $307,950.00 |
| 1. Less secured claims (See Section IV) | $586,477.81 |
| 2. Less exemptions from Schedule C | $ 54,729.63 |
| 3. Less administrative expenses (See IV) | $ 35,000.00 |
| 4. (Estimated and not including costs of sale/liquidation). | |
| 5. Less other priority claims (See IV) | $0.00 |
| | |
| Total Amount Available for Distribution to Unsecured Creditors: | $0 |
| | |
| Divided by total allowable unsecured claims of  (See Section II C) | $ 0 |
| | |
| Percentage of Dividend to Unsecured Creditors: | 0% |

Will the creditors fare better under the plan than they would in a Chapter 7 liquidation?

Yes  X         No _____

Explain:    Liquidation under chapter 7 would result in no distributions to some creditors as compared to those provided for in this Plan because of the costs and fees of administering a liquidation of Debtors' non-exempt assets. Additionally, if a plan is not confirmed, the secured creditors will sell the property of the estate or repossess the equipment resulting in no distribution to any other creditors. The Plan not only preserves the best value of the Estate, it also provides for the most effective administration of the Debtors' assets.

**VI.   Feasibility**

Debtors have been involved in farming operations for many years.  They expect to produce an amount sufficient to fund the Plan.  Though, their operation is very much dependent upon the variables not within their control, such as market price and operational costs.  Debtors have significantly increased their milk production and with the price of milk product projected to remain at or above the current $18 per cwt the proceeds from milk production should increase accordingly.  The attached income projections explain the increase in production and projected income therefrom in greater detail.  Debtors also receive social security income and royalty payments from gas wells on the property.  Debtor Larry Charles has obtained part time employment as a bus driver for disabled children that provides additional income as well.  Debtors have surrendered various pieces of farm equipment to further reduce their expenses.

Date: August 16, 2019                              /s/Brian C. Thompson, Esquire
                                                   Brian C. Thompson, Esquire
                                                   PA-91197
                                                   THOMPSON LAW GROUP, P.C.
                                                   125 Warrendale-Bayne Road, Suite 200
                                                   Warrendale, PA 15086
                                                   724-799-8404 Telephone
                                                   724-799-8409 Facsimile
                                                   bthompson@thompsonattorney.com