1) **This Agreement**, dated December __, 2020, is between

2) SELLER(S)  Larry E. Charles and Shirley M. Charles, called "Seller," and
   BUYER(S)  Shawn M. Charles, called "Buyer."

3) **PROPERTY** Seller hereby agrees to sell and convey to Buyer, who hereby agrees to purchase:
   ALL THAT CERTAIN lot or pieces of ground with buildings and improvements thereon erected, if any, known as: 1407 Deckards Run Road, in the Municipality of Canal Township, county of Venango, in the Commonwealth of Pennsylvania, Zip code 16314, Identification (e.g., Tax ID #; Parcel #; Lot, Block, Deed Book, Page, Recording Date) Parcel #: 02,002.-009.-000, Deed Book #: 0092 Page #: 0836 (67.31 Acres);  Parcel #: 02,002.-002..-000, Deed Book #: 0092 Page #: 0836 (17 Acres); and Parcel #: 02,002.-015.-000, Deed Book #: 0092 Page #: 0836 (27.35 Acres).

4) **TERMS**
   (A) Purchase Price : Two Hundred Sixty-Five Thousand and no cents ($265,000.00) U.S. Dollars
      Which will be paid to Seller by Buyer as follows:
      1. Cash or check at signing this Agreement:_____ $ 0____
      2. Cash or check within _____days of the execution of this agreement:_____ $ 0____
      3. _____ $ 0____
      4. Cash, cashier's or certified check at time of settlement:_____ $ 265,000.00
                                                          TOTAL $ 265,000.00
   (B) Deposits paid on account of purchase price to be held by Broker for Seller, unless otherwise stated here: _n/a__
   (C) Seller's and Buyer's written approval to be on or before: _____
   (D) Settlement to be on _____, or before if Buyer and Seller agree.
   (E) Conveyance from Seller will be by fee simple deed of general warranty.
   (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____Paid from the proceeds of sale_____
   (G) At time of settlement, the following will be adjusted pro-rata on a daily basis between Buyer and Seller, Reimbursing when applicable: taxes (see Notices and Information Regarding Tax Proration); rents; interest on Mortgage assumptions; condominium fees and homeowner association fees, if any; water and/or sewer fees, if Any, together with any other lienable municipal services. The charges are to be pro-rated for the period(s) Covered: Seller will pay up to and including the date of settlement; Buyer will pay for all days following Settlement, unless otherwise stated here: _____

5) **FIXTURES AND PERSONAL PROPERTY**
   (A) INCLUDED in this sale and purchase price are all existing items permanently installed in the Property, free of liens. Also included:  See attached "Appendix A".
   (B) LEASED items (not owned by Seller): _____
   (C) EXCLUDED: _____

6) **DATES/TIME IS OFF THE ESSENCE**
   (A) The said date for settlement and all other dates and times referred to for the performance of any of the Obligations of this Agreement are hereby agreed to be of the essence of this Agreement and are binding.
   (B) For the purpose of this agreement, number of days will be counted from the date of execution, by excluding the day this agreement was executed and included the last day of the time period.
   (C) The date of settlement is not extended by any other provisions of this Agreement and may only be extended by mutual written agreement of the parties.
   (D) Certain time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. Any pre-printed time periods are negotiable and may be changed by striking out the pre-printed text and inserting a different time period acceptable to all parties.

7) **FINANCING CONTINGENCY**
   [ ]    WAIVED this sale is NOT contingent on financing.

   [X]    ELECTED

Buyer Initials: _S M C_                                    Sellers Initials: _J E C_  _S. M. C._

(A)    This sale is contingent upon Buyer obtaining adequate financing.

**8) INSPECTIONS: ALL INSPECTION CONTINGENCIES ARE WAIVED BY BUYER**
- (A) Seller hereby agrees to permit inspections by authorized appraisers, reputable certifiers, insurer's Representatives, surveyors, municipal officials and/or Buyer as may be required by the lending institutions, If any, or insuring agencies. Seller further agrees to permit any other inspections required by or provided for In the terms of this Agreement. Buyer has the right to attend all inspections.
- (B) Buyer agrees that Buyer, or anyone on the property at Buyer's direction or on Buyer's behalf, will leave the Property in its same condition. In the cause of damage, Buyer will bear the risk of restoring the property or of reimbursing seller for any loss of value.
- (C) Buyer reserves the right to make a pre-settlement inspection of the property. Buyer's right to make this Inspection is not waived by any other provision of this agreement.

**9) TITLE COSTS**
(A) The property is to be conveyed free and clear of any liens, encumbrances, and easements, EXCEPTING HOWEVER the following: existing deed restrictions, historic preservation restrictions or ordinances, building restrictions, ordinances, easements of roads, easements visible upon the ground, easements of record, privileges or rights of public service companies, if any; otherwise the title to the above described real estate will be good and marketable and such as will be insured by a reputable Title Insurance Company at regular rates.
(B) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics lien insurance or fee for cancellation of same, if any; (2) Flood insurance, fire insurance with extended coverage, mine subsidence, and cancellation fees, if any; (3) Appraisal fees and charges paid in advance to lender, if any; (4) Buyers customary settlement costs and accruals (5) Sellers customary settlement costs and accruals.

**11) ZONING CLASSIFICATION**
(A) Failure of this agreement to contain the zoning classification (except in cases where the property(and each parcel thereof, if sub dividable) is zoned solely or primarily to permit single-family dwellings) shall render this agreement voidable at the option of the buyer, and, if voided, any deposits rendered by buyer shall be returned to the buyer without and requirement for court action.
**Zoning Classification; Residential.**

**12) COAL NOTICE**
THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURES ON OR IN SUCH LAND. (This notice is set forth in the manner provided in section 1 of the Act of July 17, 1957, P.L. 984)"Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economical interests in the coal. This acknowledgment is made for the purpose or complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from seller which deed will contain the aforesaid provision.

**13) POSSESSION**
- (A) Possession is to be delivered by deed, keys and:
  1) Physical possession to vacant Property free of debris, with all structures broom-clean, at day and time of settlement, AND/OR
  2) Assignment of existing lease(s), together with any security deposits and interest, at time of settlement, if Property is leased at the execution of this Agreement or unless otherwise specified herein. Buyer will acknowledge existing lease(s) by instilling said lease(s) at time of execution of this Agreement.
- (B) Seller will not enter into any new leases, written extensions or existing leases, if any, or additional leases for the property without the written consent of buyer.

**14) RECORDING** This agreement will not be recorded in the Office for the Recording of Deeds or in any other office or place of public record, and if buyer causes or permits this agreement to be recorded. Seller may elect to treat such act as a breach of this agreement.

Buyer Initials: _S. M. C_    Sellers Initials: _J E C_  _A. M. C._

15) **ASSIGNMENT** This agreement will be binding upon the parties, their respective heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto, it being expressly understood, however, that buyer will not transfer or assign this agreement without the written consent of seller.

16) **MAINTENANCE & RISK OF LOSS**
    (A) Seller will maintain the Property, grounds, fixtures, and any personal property specifically scheduled herein in its present condition, normal wear and tear expected.
    (B) In the event any system or appliance included in the sale of the property fails and Seller does not repair or replace the item, Seller will promptly notify Buyer in writing of Seller's choice to:
       1. Repair or replace the failed system or appliance before settlement, or credit Buyer at settlement for the fair market value of the failed system or appliance. (This option must be acceptable to the lender, if any) In each case, Buyer accepts the property and agrees to the RELEASE set forth in paragraph 18 of this agreement, OR
       2. Not repair or replace the failed system or appliance, and not credit buyer at settlement for the fair market value of the failed system or appliance. If seller dose not repair, replace or offer a credit for the failed system or appliance, buyer will notify seller in writing within 5 days or before settlement, whichever is sooner, that Buyer will:
          a. Accept the property and agree to the RELEASE set forth in paragraph 18 of this agreement, OR
          b. Terminate this agreement, in which case all deposit monies on account of purchase price will be returned promptly to buyer and this agreement will be VOID
             (B) Seller will bear risk of loss from fire or other casualties until time of settlement. In the event of damage by fire or other casualties to any property included in the sale that is not repaired or replaced prior to settlement, Buyer will have the option of rescinding this agreement and promptly receiving all monies paid on account of purchase price or of accepting the property in its then condition together with the proceeds of any insurance recovery obtained by seller. Buyer is hereby notified that buyer may insure buyer's equitable interest in this property as of the time of execution of this agreement.

17) **WAIVER OF CONTINGENCIES**
    BUYER WAIVES ALL INSPECTION CONTINGENCIES.

18) **RELEASE** buyer hereby releases, quit claims and forever discharges SELLER, ALL AGENTS, their LICENSEES, EMPLOYEES, and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injuries and property damage and all of the consequences therefore, whether now know or not, which may arise from the presence of environmental hazards, any deficiencies in the on-site water service system, or any defects or conditions on the property. This release will survive settlement.

19) **REPRESENTATIONS**
    (A) Buyer understands that any representations, claims, advertising, promotional activities, brochures or plans of any kind made by seller, brokers, their licensees, employees, officers, or partners are not a part of this agreement, unless expressly incorporated or stated in this agreement. It is further understood that this agreement contains the whole agreement between seller and buyer and there are no other terms, obligations covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this agreement will not be altered, amended, changed, or modified except in writing executed by the parties.
    (B) It is understood that the buyer has inspected the property before signing this agreement (including fixtures and any personal property specifically scheduled herein), or has waived the right to do so, and has agreed to purchase it in its present condition unless otherwise stated in this agreement. Buyer acknowledges that brokers, their licensees, employees, officers, or partners have not made an independent examination or determination of the structural soundness of the property, the age or condition of the components, environmental conditions, the permitted uses, or of conditions existing in the locale where the property is situated; nor have they made a mechanical inspection of any of the systems contained therein.
    (C) Broker(s) may perform services to assist unrepresented parties in complying with the terms of this agreement.
    (D) The headings and captions in this agreement are meant only to make it easier to find the paragraphs.

20) **DEFAULT**
    (A) Seller has the option of retaining all sums paid by buyer, including the deposited monies, should buyer:

Buyer Initials: _S.M. C_    Sellers Initials: _L E C_   _S. M.C._

1. Fail to make any additional payments as specified in paragraph 3; OR
2. Furnish false or incomplete information to seller, broker(s), or the lender, if any, concerning buyer's legal or financial status, or fail to cooperate in the processing of the financing application, which acts would result in the failure to obtain the approval of a financing commitment; OR
3. Violate or fail to fulfill and perform any other terms or conditions of this agreement.

(B) Unless otherwise checked in paragraph 20 (C), seller may elect to retain those sums paid by buyer, including deposit monies, in one of the following manners:
1. On account of purchase price; OR
2. As monies to be applied to seller's damages; OR
3. As liquidated damages for such breach

(C) [X] Seller is limited to retaining sums paid by buyer, including deposit monies, as liquidated damages.

(D) If seller retains all sums paid by buyer, including deposit monies, as liquidated damages pursuant to paragraph 20 (B) or (C), buyer and seller will be released from further liability or obligation and this agreement will be VOID.

21) **SPECIAL CLAUSES**
(A) The following are part of this agreement:

Closing costs will be paid from the proceeds of the sale.

NOTICE TO ALL PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT. Return by facsimile transmission (fax) of this agreement, and all addenda, bearing the signatures of all parties, constitutes acceptance of this agreement. Parties to this transaction are advised to consult an attorney before signing if they desire legal advice.

BUYER'S MAILING ADDRESS: 1407 Deckards Run Rd Cochranton, Pa. 16314

BUYER'S CONTACT NUMBER(S): ___

WITNESS David E Charles    BUYER Shawn M Charles    DATE 12-23-20

WITNESS ___    BUYER ___    DATE ___

WITNESS ___    BUYER ___    DATE ___

SELLERS MAILING ADDRESS: 1407 Deckards Run Rd Cochranton, Pa 16314

SELLERS CONTACT NUMBER(S): ___

WITNESS David E Charles    SELLER Larry E Charles    DATE 12-23-20

WITNESS David E Charles    SELLER Shirley M. Charles    DATE 12-23-20

WITNESS ___    SELLER ___    DATE ___

Buyer Initials: S.M.C    Sellers Initials: LEC  S.M.C.

**Appendix A**

1. Any and all farm equipment and tools currently in possession, legally owned by, and located on property, of the Seller.
2. Any and all dairy equipment and tools currently in possession, legally owned by, and located on property, of the Seller.
3. Any and all farm animals, including dairy cows, currently in possession, legally owned by, and located on property, of the Seller.[i]
4. Any and all farm supplies including, but not limited to, planting seed and fertilizer currently in possession, legally owned, and located on property, of the Seller.
5. All equipment owned by David Charles is specifically, and fully, excluded from this sale.
6. All equipment owned by Gabriel Charles is specifically, and fully, excluded from this sale.

---

[i] Buyer has previously purchased a portion of the dairy cows, as such the cows not included in this sale.